# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| JOHN ROBERT BEGLEY and CARRIE BELL BEGLEY, on behalf of themselves and all others similarly situated, | : : : | |
| | : | **FIRST AMENDED** |
| Plaintiffs, | : | **CLASS ACTION COMPLAINT** |
| | : | **JURY DEMANDED** |
| v. | : | |
| | : | 3:16cv149-MCR/CJK |
| OCWEN LOAN SERVICING, LLC, and PRIMARY RESIDENTIAL MORTGAGE, INC., | : : : | |
| Defendants. | : | |

Now come Plaintiffs, Robert and Carrie Begley, on behalf of themselves and all other similarly situated residents of the United States of America and allege as follows:

## PARTIES

1.      Plaintiffs are residents of Gulf Breeze, Florida who entered into a mortgage contract in May of 2006.  *See* GMAC Mortgage, attached hereto as Exhibit A.  The Lender is identified as PRIMARY RESIDENTIAL MORTGAGE, INC.  *Id.* at 1.  The servicing of the mortgage was immediately assigned to GMAC MORTGAGE CORPORATION, and all payments on the mortgage were immediately due and owing to GMAC.  *Id.* at 23 and 37.  In February of 2013, the mortgage was assigned to Ocwen Loan Servicing, LLC.

2.      Defendant, Ocwen Loan Servicing, LLC ("Ocwen") is a Delaware limited liability company operating as a subsidiary of Ocwen Financial Corporation, a Florida corporation.  Ocwen is, among other things, one of the largest residential mortgage servicers in the United States and its servicing portfolio has grown from approximately $55 billion in 2010 to over $518 billion.  Ocwen is not a national bank, nor is it regulated by the Office of the Comptroller of Currency or governed by the National Bank Act.

3.      Defendant, Primary Residential Mortgage, Inc., ("PRMI") is a Nevada corporation.   PRMI is not a national bank, nor is it regulated by the Office of the Comptroller of Currency or governed by the National Bank Act.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are 100 or more Class Members and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.   Additionally, at least one Class member is a citizen of a state different from the corporate domicile of the Defendant.

5.      This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that the class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all members is impractical, there are substantial questions of law and fact common to the class, and this case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

(a)      questions of law and fact enumerated below, which are all common of the class, predominate over any questions of law or fact affecting only individual members of the class;

(b)      a class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

(c)      the relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

(d)      there are no unusual difficulties foreseen in the management of this class action.

6.      The Court has personal jurisdiction over the Defendants, who have at least minimum contacts with the State of Florida because the Defendants conducts business there and have availed themselves of the laws of Florida.

7.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue in the United States District Court for the Northern District of Florida is proper because the Defendants transact business within this District and a substantial part of the events giving rise to the claims at issue in this Complaint occurred in this District.

9.      All conditions precedent to this action have occurred, been performed, or have been waived.

## FACTUAL ALLEGATIONS

### Misapplication of Mortgage Payments by Ocwen

10.     This action arises from the misapplication of mortgage payments by Ocwen.

11.     Ocwen regularly purchases mortgage portfolios as well as enters into agreements with mortgage lenders for servicing of residential home mortgages that also entail Ocwen's acquiring servicing and other rights and receiving assignments of residential home mortgage loans.

12.     Ocwen regularly asserts its rights to act as a mortgage assignee in foreclosure proceedings across the country, as well as other circumstances.

13.     Ocwen also regularly solicits loan modifications of home mortgage loans from borrowers through mailings and customer service calls, further evidencing its ownership or assignment interest in residential home mortgage loans.

14.     Many mortgage lenders and mortgage brokers encourage and solicit borrowers to pay their mortgage on an accelerated schedule.  The stated purpose is to reduce principal balance on an accelerated rate, thereby reducing the amount of interest paid on the loan, resulting in complete payoff of the loan in advance of the original payoff date.  For example, a borrower that pays one half of their monthly mortgage payments on a bi-weekly schedule will actually make twenty-six (26) payments in one year, totaling thirteen (13) full monthly payments, resulting in one extra "monthly" mortgage payment per year.  In addition to making one extra "monthly" mortgage payment every twelve months, paying on a bi-weekly schedule accelerates the payments in that the borrower is paying earlier than required under the mortgage, providing Ocwen earlier access to the monies.

15.     Because interest is calculated by multiplying the agreed upon interest rate by the remaining loan balance, a borrower paying any monies early and in excess of the scheduled monthly payment should realize a reduction in principal, and accordingly a reduction in the amount of interest paid, each time the excess payment is made.

16.     This fundamental payment practice is recognized in the GMAC Mortgage, and in fact in all standard Fannie Mae/Freddie Mac uniform mortgage agreements.  Lenders and servicers are required to apply amounts paid by the borrower in excess of the original scheduled monthly payments to the principal loan balance.  *See* Ex. A at 4, Section 2 ("Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.")

17.     Ocwen administers, services, and/or has an ownership or assignment interest many mortgages in the State of Florida and throughout the United States where the borrower has chosen to pay on accelerated schedule.

18.     For borrowers paying on an accelerated schedule, Ocwen has purposefully and deliberately failed or refused to apply excess payments to the principal loan balance.

19.     Rather than applying excess payments to a borrower's loan balance, Ocwen applies only one cent ($0.01) to principal and holds the remaining amount in "suspense" until additional funds are received to equal a full monthly mortgage payment regardless of whether the borrower is ahead of the original payment schedule.

20.     Ocwen pays the borrower no interest on the funds held in "suspense."

21.     Once the borrower is a paid up and ahead of the monthly amount due and owing on the mortgage, Ocwen does not apply additional, early payments directly to principal as required under the Mortgage.  Instead, Ocwen applies the additional, early payment as a new monthly payment for the following month.  Because Ocwen holds the additional early payment in a "suspense" account allowing Ocwen early access to the funds, it does not reduce principal in an accelerated manner.  As a direct result, Ocwen collects more interest than allowed under the terms of the Mortgage and Note.

22.     Ocwen's practices and procedures deprive borrowers of the reduction in principal and interest at the time of the excess payment, thereby causing more funds than required to be applied to interest on each future payment.

23.     Ocwen's practices and procedures of holding excess payments in "suspense" further deprives the borrower of interest each day on the excess funds held in a suspense account.

24.     Upon information and belief, the excess payments that Ocwen receives mid-month, the payments that amount to less than a full monthly mortgage payment that are designated as "Suspense Payments," are moved into an interest-bearing account for which Ocwen retains the proceeds and profits.

**Plaintiffs Robert and Carrie Begley**

25.     On May 12, 2006, Robert and Carrie Begley entered into a mortgage agreement with PRMI as the security instrument for the purchase of their home at 1254 Greenview Lane in Gulf Breeze, Florida 32563.  Plaintiffs also executed a Note.  *See* Exhibits A and B.

26.     Immediately, Plaintiffs' Mortgage was "assigned" to GMAC Mortgage Corporation ("GMAC") for, among other things, servicing.  *See* Ex. A at 23 and 37.

27.     Plaintiffs' monthly mortgage payment of $3,372.71 was paid each month, once per month, from 2006 to 2012.

28.     In 2012, Plaintiffs received a solicitation from GMAC offering, among other things, a bi-weekly accelerated mortgage payoff program.  *See* Purchase Power Mortgage Program, attached hereto as Exhibit. C.[1]

29.     Among other things, the program offered to debit one-half of Plaintiffs' monthly mortgage payment bi-weekly, thereby effectuating twenty-six (26) bi-weekly payments per year, resulting in thirteen (13) full monthly payments per year.  The plan promised that doing so would "reduce the time it takes to pay off your mortgage, resulting in interest savings over the life of the loan."  *Id.*

30.     The purpose of the program was to reduce the principal balance of the loan at an accelerated rate, thereby reducing the amount of interest paid by Plaintiffs and to pay off the loan in its entirety years earlier than scheduled.

31.     GMAC provided Plaintiffs an amortization schedule that compared their one-time monthly payment schedule with the anticipated bi-weekly payment schedule, illustrating the

---

[1] The accelerated payment plan marketing materials attached as Ex. C is not the same solicitation Plaintiffs received in 2012, though it contains similar statements regarding the plan and how accelerated payments would impact mortgages.

reduction of principal and resulting savings in interest with the bi-weekly payment schedule.  *See* GMAC Amortization Schedule, attached as Ex. C.

32.     Plaintiffs started making payments bi-weekly in accordance with the program beginning on October 19, 2012.  Accordingly, the Plaintiffs' bank account was debited one-half of their monthly mortgage payment, in the amount of $1,686.36 every two weeks, from that day forward.  Thereafter, Plaintiffs' bank account has been debited $1,686.36 bi-weekly.

33.     On February 7, 2013, GMAC provided written notice to Plaintiffs that it was "the subject of a bankruptcy proceeding."  *See* GMAC Letter, Exhibit E.

34.     The notice further indicated Plaintiffs' mortgage and note was transferred to Ocwen. *Id.*

35.     As it is the regular course of business, Ocwen received an assignment of Plaintiffs' mortgage and note.

36.     Upon the assignment, Ocwen became a party to the mortgage and note contracts, or otherwise assumed an ownership or assignment interest in them.

37.     Following the assignment, Ocwen has purposefully and deliberately failed or refused to apply Plaintiffs' excess payments to the principal loan balance.

38.     Rather than applying the Plaintiffs' excess payments directly to the loan principal balance, Ocwen has applied only one cent ($0.01) to principal and holds the remaining amount in "suspense" until additional funds are received to equal a full monthly payment.

39.     Ocwen pays the borrower no interest on the funds held in "suspense."

40.     Once the Plaintiffs were paid up and ahead of the monthly amount due and owing on the mortgage, Ocwen did not apply additional, early payments directly to principal as required under the Mortgage.  Instead, Ocwen applies the additional, early payment as a new monthly

payment for the following month, which had the effect of paying Ocwen early but did not reduce principal in an accelerated manner.  As a direct result, Ocwen was paid more interest than it should have been paid based on the contract and when the payments were received.

41.    Ocwen's practices and procedures deprived Plaintiffs of the reduction in principal and interest at the time of the excess payment, thereby causing more funds than required to be applied to interest on each future payment.

42.    Upon information and belief, the excess payments that Ocwen receives from the Plaintiffs mid-month, the payments that amount to less than a full monthly mortgage payment that are designated as "Suspense Payments," are moved into an interest-bearing account for which Ocwen retains the proceeds and profits.

**CLASS ALLEGATIONS**

**A.**    **Class Definitions**

43.    Plaintiffs bring this action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated. Plaintiffs seek to represent the following classes:

**Nationwide Class**:

> All borrowers in good standing who made mortgage payments to Ocwen in excess of their monthly scheduled payment.  Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees, class counsel in this matter and the Court personnel in this matter.

**PMRI Class**:

> All borrowers in good standing whose mortgage loan originated with Primary Residential Mortgage, Inc., who made mortgage payments to Ocwen in excess of their monthly scheduled payment.  Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees, class counsel in this matter and the Court personnel in this matter.

**Florida Class as to Count V - Florida Deceptive and Unfair Trade Practices Act**:

> All Florida borrowers in good standing who made mortgage payments to Ocwen in excess of their monthly scheduled payment.  Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees, class counsel in this matter and the Court personnel in this matter.

44.     Plaintiffs reserve the right to modify or amend the definitions of the proposed classes before the Court determines whether certification is appropriate.

45.     Defendants subjected Plaintiffs and the respective Class Members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.

**B.      Numerosity**

46.     The proposed classes are so numerous that joinder of all members would be impracticable.  Ocwen services a large number of mortgage loans in the State of Florida, as well as nationwide.  Many of these loans originated with PRMI.  The individual Class Members are ascertainable, as the names and addresses of all class members can be identified in the business records maintained by Ocwen.  The precise number of class members for each class numbers at least in the thousands and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually.  Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

**C.      Commonality**

47.     There are questions of law and fact that are common to Plaintiffs and Class Members' claims.  These common questions predominate over any questions that go particularly

to any individual member of the Class.  Among such common questions of law and fact are the following:

a.       Whether Ocwen or PMRI failed or refused to apply excess payments made by borrowers to their loan principal balance as required by law or the borrowers' mortgage agreements;

b.       Whether Ocwen or PMRI breached the mortgage contracts with Plaintiffs and the Class by failing or refusing to apply excess payments made by borrowers to their loan principal balance as required by law or the borrowers' mortgage agreements;

c.       Whether Ocwen or PMRI placed excess mortgage payments in an interest-bearing account and retained the interest earned;

d.       Whether Ocwen or PMRI was negligent in failing or refusing to apply excess payments made by borrowers to their loan principal balance as required by law or the borrowers' mortgage agreements

e. Whether an objective consumer would be deceived by Ocwen's or PMRI's excess mortgage payment practices as well as material mis-statements and omissions made to consumers regarding the impact of how Ocwen or PMRI applied excess payments to the mortgage balance, thereby violating FDUTPA;

f.       Whether Ocwen or PMRI intentionally and unjustifiably interfered with Plaintiffs' and the Classes' rights under the mortgage contracts by requiring borrowers to pay more interest on their mortgage than they should have and also profiting from interest on funds held in "suspense"; and

g.       Whether Plaintiffs and the Class Members are entitled to damages and/or injunctive relief as a result of Ocwen's or PMRI's conduct.

h.       Whether Ocwen was assigned Plaintiffs' note and mortgage contracts attached here as Exhibits A and B, or hold any rights regarding the note and mortgage contracts.

i.       Whether Ocwen, as servicer of Plaintiffs' mortgage, is the agent of PRMI.

k.       Whether PRMI is responsible for the acts of Ocwen.

l.       Whether PRMI has received any benefit from the wrongful acts of Ocwen as described herein.

**D.       Typicality**

48.     Plaintiffs are members of the Class they seek to represent.  Plaintiffs' claims are typical of the respective classes' members' claims because of the similarity, uniformity, and

common purpose of Ocwen's (and/or PMRI's) unlawful conduct.  Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs have as a result of Ocwen's (and/or PMRI's) wrongful conduct.

**E.     Adequacy of Representation**

49.     Plaintiffs are adequate representatives of the classes they seek to represent and will fairly and adequately protect the interests of the classes.  Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them.  There is no hostility between Plaintiffs and the unnamed class members.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

50.     To prosecute this case, Plaintiffs have chosen the undersigned law firms, which are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**F.     Requirements of Fed. R. Civ. P. 23(b)(3)**

46.     The questions of law or fact common to Plaintiffs and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the classes.  All claims by Plaintiffs and the unnamed class members are based on the misapplication of excess mortgage payments.

47.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even if there will be some individualized damage determinations.

48.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

**G.      Superiority**

49.      A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

(a) Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;

(b) Individual claims by class members are impractical because the costs to pursue individual claims may exceed the value of what any one class member has at stake.  As a result, individual class members may have no interest in prosecuting and controlling separate actions;

(c) There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

(d) The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

(e) Individual suits would not be cost effective or economically maintainable as individual actions; and

(f) The action is manageable as a class action.

**H.      Requirements of Fed. R. Civ. P. 23(b)(1) & (2)**

50.      Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

51.      Defendants have acted or failed to act in a manner generally applicable to the entirety of the class or classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the classes as a whole.

<u>**COUNT I**</u>
**BREACH OF CONTRACT**
**(As to Ocwen)**

52.      Plaintiffs, on behalf of themselves and the Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

53.      Ocwen was assigned the home mortgage loans of the Plaintiffs and the Classes.

54.     Plaintiffs and all similarly situated Class Members have mortgages that are owned and/or serviced by Ocwen.

55.     Plaintiffs and these Class Members' mortgages are written on uniform mortgage forms and contain the same or substantially similar provisions regarding the application of excess mortgage payments.  *See* Ex. A at 4, sec. 2.

56.     After excess payments are applied to other amounts due, Plaintiffs' mortgage requires Ocwen to apply excess mortgage payments to "reduce the principal balance" of the loan. *Id.*

57.     Similarly, Plaintiffs and these Class Members were issued Mortgage Notes which are uniform forms and contain the same or substantially similar provisions regarding the application of excess mortgage payments.  *See* Ex. B.

58.     The Note includes the following language:

### 4.     BORROWER'S RIGHT TO PREPAY

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.

*Id.*

59.     This language is the same or substantially similar to provisions within Notes for all Class Members regarding the application of excess mortgage payments, and requires the servicer to apply excess mortgage payments directly to principal rather than hold payments in "suspense" or apply excess payments to the schedule's next month's monthly mortgage payment.

60.     Ocwen's practices and procedures deprive borrowers of the reduction in principal and interest at the time of the excess payment, thereby causing more funds than required to be applied to interest on each future payment.

61.     Ocwen's practices and procedures of holding excess payments in "suspense" further deprives the borrower of interest each day on the excess funds held in a suspense account and constitutes a breach of contract.

62.     Ocwen's refusal to apply excess mortgage payments to Plaintiffs' and the Class members' principal constitutes breach of contract.

63.     Plaintiffs and the Class Members have suffered damages as a result of Ocwen's breaches of contract.

**COUNT II**
**BREACH OF CONTRACT**
**(As to PRMI)**

64.     Plaintiffs, on behalf of themselves and the PRMI Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

65.     Plaintiffs and PRMI Class Members have mortgages that were originated by PRMI.

66.     Plaintiffs and these PRMI Class Members' mortgages are written on uniform mortgage forms and contain the same or substantially similar provisions regarding the application of excess mortgage payments.  *See* Ex. A at 4, sec. 2.

67.     After payments are applied to other amounts due, Plaintiffs' mortgage requires PRMI, or any mortgage servicer engaged by PRMI to apply excess mortgage payments to "reduce the principal balance" of the loan.  *Id.*

68.     Similarly, Plaintiffs and these Class Members were issued mortgage notes which are uniform forms and contain the same or substantially similar provisions regarding the application of excess mortgage payments.  *See* Ex. B.

69.     The note includes the following language:

### 4.      BORROWER'S RIGHT TO PREPAY

The Note Holder will use my Prepayments to reduce the amount of
Principal that I owe under this Note.

*Id.*

70.     This language is the same or substantially similar to provisions within notes for all PRMI Class Members regarding the application of excess mortgage payments, and requires the servicer to apply excess mortgage payments directly to principal rather than hold payments in "suspense" or apply excess payments to the schedule's next month's monthly mortgage payment.

71.     The practices and procedures of Ocwen, as agent/assignee of PRMI, deprive borrowers of the reduction in principal and interest at the time of the excess payment, thereby causing more funds than required to be applied to interest on each future payment.

72.     As the agent of PRMI, Ocwen's practices and procedures of holding excess payments in "suspense" further deprives the borrower of interest each day on the excess funds held in a suspense account and constitutes a breach of contract.

73.     As agent of PRMI, Ocwen's refusal to apply excess mortgage payments to Plaintiffs' and the Class members' principal constitutes breach of contract.

74.     Plaintiffs and the PRMI Class members have suffered damages as a result of Ocwen's breaches of contract.

### COUNT III
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (As to Ocwen)

75.     Plaintiffs, on behalf of themselves and the Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

76.     A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance.  Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

77.     Plaintiffs' and the Class Members' mortgage contracts require Ocwen to apply excess mortgage payments to "reduce the principal balance" of the loan.

78.     Ocwen breached the implied covenant of good faith and fair dealing by, among other things, failing or refusing to apply excess payments to a borrower's principal loan balance, applying only one cent ($0.01) to principal and holding the remaining amount in "suspense" until additional funds are received to equal a full monthly payment, and holding excess payments in a "suspense account" for which it retains interest proceeds for its own profits.

79.     As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiffs and the Class have suffered damages.

<u>**COUNT IV**</u>
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(As to PRMI)**

80.     Plaintiffs, on behalf of themselves and the PRMI Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

81.     A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance.  Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

82.     Plaintiffs' and the PRMI Class Members' mortgage contracts require Ocwen as the agent of PRMI to apply excess mortgage payments to "reduce the principal balance" of the loan.

83.     Ocwen, as agent for PRMI breached the implied covenant of good faith and fair dealing by, among other things, failing or refusing to apply excess payments to a borrower's principal loan balance, applying only one cent ($0.01) to principal and holding the remaining amount in "suspense" until additional funds are received to equal a full monthly payment, and holding excess payments in a "suspense account" for which it retains interest proceeds for its own profits.

84.     As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiffs and the PRMI Class have suffered damages.

<u>**COUNT V**</u>
**UNJUST ENRICHMENT**[2]
**(As to Ocwen)**

85.     Plaintiffs, on behalf of themselves and the Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

86.     Ocwen and/or its affiliates received from Plaintiffs and Class Members benefits, in the form of funds earned on interest it has held and continues to hold in "suspense."

87.     Further, Ocwen received financial benefits in the form of increased interest income due to its own deliberate and purposeful failure or refusal to apply excess payments by Plaintiffs and the Class to the mortgage principal loan balances.

88.     In addition, Ocwen received financial benefits in the form of increased security on the notes in that the payments were attributable to later payments due rather than towards equity on the property.

89.     As a result, Plaintiffs and the Class have conferred a benefit on Ocwen.

---

[2] Plaintiffs and the Class plead unjust enrichment as an alternative to their contractual claims against Ocwen.

90.     Ocwen had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on it.

91.     Ocwen will be unjustly enriched if it is allowed to retain the aforementioned benefits, and each Class Member is entitled to recover the amount by which Ocwen was unjustly enriched at his or her expense.

## COUNT VI
## UNJUST ENRICHMENT[3]
## (As to PRMI)

92.     Plaintiffs, on behalf of themselves and the PRMI Class, re-allege and incorporate every paragraph of this Complaint and further allege:

93.     Ocwen and/or its affiliates including PRMI received from Plaintiffs and PRMI Class Members benefits, in the form of funds earned on interest it has held and continues to hold in "suspense".

94.     Further, Ocwen and/or its affiliates including PRMI received financial benefits in the form of increased interest income due to their own deliberate and purposeful failure or refusal to apply excess payments by Plaintiffs and the PRMI Class to the mortgage principal loan balances.

95.     In addition, PRMI received financial benefits in the form of increased security on the notes in that the payments were attributable to later payments due rather than towards equity on the property, and also in the form of an increased value of the notes generally for potential re-sale on the open market by PRMI.

96.     As a result, Plaintiffs and the PRMI Class have conferred a benefit on Ocwen and PRMI.

---

[3] Plaintiffs and the PRMI Class plead unjust enrichment as an alternative to their contractual claims against Ocwen and PRMI.

97.     Ocwen and PRMI had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on it.

98.     Ocwen and PRMI will be unjustly enriched if it is allowed to retain the aforementioned benefits, and each PRMI Class Member is entitled to recover the amount by which Ocwen and PRMI was unjustly enriched at his or her expense.

**COUNT VII**
**NEGLIGENCE**
**(As to Ocwen)**

99.     Plaintiffs, on behalf of themselves and the Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

100.    Plaintiffs' mortgage requires Ocwen to apply excess mortgage payments to "reduce the principal balance" of the loan.

101.    As the assignee or acquirer of mortgage loans (or the holder of pertinent rights thereunder) of the Plaintiffs and the Class, Ocwen owes a duty of care them.

102.    Ocwen's practices and procedures of holding excess payments in a suspense account for a period of time, rather than applying those excess funds to the principal amount when received deprives Plaintiffs and the Class of a reduction in principal and interest at the time of the excess payment. Consequently, as a result, more funds are applied to interest on each future payment, thereby causing damages to Plaintiffs and the Class.

103.    After Plaintiffs complained to Ocwen that their principal had not been reduced by their excess payments, Ocwen admitted to negligence in a letter dated December 3, 2013 to Plaintiffs, indicating it had "experienced system issues," and there was no "error" on the part of the Plaintiffs.  *See* December 3, 2013 letter from Ocwen attached hereto as Exhibit D.

104.    Subsequently, Ocwen has failed or refused to correct the "system issue" and Plaintiffs and the Class have and continue to suffer damages a result of Ocwen's negligence.

105.     Ocwen failed to exercise reasonable care to avoid harm to Plaintiffs and the Class.

106.     Ocwen's failure to apply excess mortgage payments to Plaintiffs' and the Class Members' mortgages constitutes negligence.

107.     Plaintiffs and the Class members have suffered damages as a result of Ocwen's negligence.

**COUNT VIII**
**NEGLIGENCE**
**(As to PRMI)**

108.     Plaintiffs, on behalf of themselves and the Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

109.     Plaintiffs' mortgage requires PRMI, directly or through its agents or assigns, to apply excess mortgage payments to "reduce the principal balance" of the loan.

110.     As the originator of mortgage loans (or the holder of pertinent rights thereunder) of the Plaintiffs and the Class, PRMI owes a duty of care them.

111.     PRMI's practices and procedures (or lack thereof) relating to the oversight of how it, or PMRI's agents or assigns, hold excess payments in a suspense account for a period of time, rather than applying those excess funds to the principal amount when received deprives Plaintiffs and the Classes of a reduction in principal and interest at the time of the excess payment. Consequently, as a result, more funds are applied to interest on each future payment, thereby causing damages to Plaintiffs and the Classes.

112.     PRMI's agent or assign, Ocwen, admitted to negligence in a letter dated December 3, 2013 to Plaintiffs, indicating it had "experienced system issues," and there was no "error" on the part of the Plaintiffs.  *See* December 3, 2013 letter from Ocwen attached hereto as Exhibit D.

113.     Subsequently, PRMI failed or refused to correct the "system issue" identified by Ocwen, PRMI's agent or assign, and Plaintiffs and the Class have and continue to suffer damages a result of PRMI's negligence.

114.     PRMI failed to exercise reasonable care to avoid harm to Plaintiffs and the Class.

115.     PRMI's failure to monitor or oversee the proper application of excess mortgage payments to Plaintiffs' and the Class Members' mortgages constitutes negligence.

116.     Plaintiffs and the Class members have suffered damages as a result of PRMI's negligence.

**COUNT IX**
**VIOLATION OF THE FLORIDA DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT**
**(As to Ocwen)**

117.     Plaintiffs, on behalf of themselves and the Florida Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

118.     FDUTPA, section 501.201, *et seq.*, Florida Statutes, prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204, Fla. Stat.

119.     In addition to loan servicing, Ocwen also regularly solicits loan modifications of home mortgage loans from borrowers through mailings and customer service calls in Florida.

120.     Ocwen's business practices are conduct in trade or commerce as defined by FDUTPA, section 501.201, *et seq.*,

121.     Plaintiffs and the Florida Class are "consumers" as that term is defined in section 501.203(7), Florida Statutes.

122. Specifically, Ocwen is bound to service the mortgage based on the terms of the Mortgage, the Note and accelerated payment plan marketing materials set forth by GMAC. *See* Exs. A, B and C.

123. In failing to do so, Ocwen has engaged in, and continues to engage in, unconscionable acts or practices and has engaged in unfair or deceptive acts in the conduct of its trade and/or commerce in the State of Florida. Ocwen's actions result in material misrepresentations and omissions to the Plaintiffs and class members.

124. The policies, acts, and practices alleged herein were intended to result and did result in the excessive payment of interest to Ocwen not allowed or contemplated by the mortgage agreements it is bound by and that it has with Plaintiffs and the Florida Class.

125. The policies, acts, and practices alleged herein were intended to result and did result in unlawful or unfair compensation for Ocwen.

126. Ocwen' s conduct of purposefully and deliberately failing or refusal to apply excess payments by Plaintiffs and the Class to the mortgage loan balance violates FDUTPA and was conceived, devised, planned, implemented, approved and executed within the State of Florida, which has an interest in prohibiting violations of FDUTPA.

127. Ocwen it is not a bank or savings and loan association regulated by federal agencies.

128. Plaintiffs and the Florida Class have sustained damages as a direct and proximate result of Ocwen's unfair and unconscionable practices. Section 501.211(2), Florida Statutes, provides Plaintiffs and the Florida Class a private right of action against the Defendant and entitles them to recover their actual damages, plus attorneys' fees and costs.

129.    Plaintiffs and the Florida Class have suffered and will continue to suffer irreparable harm if Ocwen continues to engage in such deceptive, unfair, and unreasonable practices.

## COUNT X
## CONVERSION
### (As to Ocwen)

130.    Plaintiffs, on behalf of themselves and the Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

131.    Ocwen had and continues to have a duty to maintain and preserve the funds of Plaintiffs and the Class Members, and to prevent their diminishment through Ocwen's own wrongful acts.

132.    By holding excess payments in a suspense account for a period of time, rather than applying those excess funds to the principal amount when received, without Plaintiffs' and the Class Members' consent, and failing to inform Plaintiffs and the Class Members of the suspense account process, Ocwen has, without proper authorization, assumed and exercised the right of ownership over Plaintiffs' and the Class Members' funds, in hostility to the rights of Plaintiffs and other Class Members without legal justification.

133.    Ocwen has wrongfully collected payments from Plaintiffs and the Class Members, and has taken their specific and readily identifiable funds.

134.    Ocwen continues to retain these funds unlawfully and without the consent of Plaintiffs or Class Members.

135.    Ocwen intends to permanently deprive Plaintiffs and the Class Members of these funds.

136.   These funds are properly owned and identifiable by Plaintiffs and the Class Members, not Ocwen.   Yet, Ocwen now claims that it is entitled to the funds' ownership, contrary to the rights of the Plaintiff and the other Class Members.

137.   Plaintiff and the Class Members are entitled to immediate possession of these funds.

138.   Ocwen has wrongfully converted these specific and readily identifiable funds.

139.   As a direct and proximate result of this wrongful conversion, Plaintiffs and the Class Members have suffered and continue to suffer damages.   Ocwen's wrongful conduct is continuing.

140.   By reason of the foregoing, Plaintiffs and the other Class Members are entitled to recover from Defendants all damages and costs permitted by law, including all amounts that Ocwen has wrongfully converted.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all similarly situated individuals, demands judgment against the Defendants as follows:

1.   Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2), or Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiffs and their counsel to be representatives of the Classes;

2.   Enjoining Ocwen from continuing the acts and practices described above;

3.   Awarding damages sustained by Plaintiffs and the Classes as a result of Defendants' breaches of the mortgage contracts and the implied covenant of good faith and fair dealing, together with pre-judgment interest;

4.      Finding that Ocwen and PRMI have been unjustly enriched and requiring it to refund all unjust benefits to Plaintiffs and the Classes, together with pre-judgment interest;

5.      Finding Ocwen converted the Classes' funds and requiring a full refund of all funds converted;

6.      Awarding Plaintiffs and the Classes costs and disbursements and reasonable allowances for the fees of Plaintiffs' and the Classes' counsel and experts, and reimbursement of litigation expenses.

7.      Awarding Plaintiffs and the Florida Class damages, injunctive relief, declaratory relief, attorneys' fees, and costs under FDUTPA; and

8.      Awarding such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Classes request a jury trial for any and all Counts for which a trial by jury is permitted by law.

/s/ Bryan F. Aylstock

Bryan F. Aylstock
Aylstock, Witkin, Kreis & Overholtz, PLLC
17 E. Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
Fax: (850) 916-7449
Email: baylstock@awkolaw.com

Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
Golomb & Honik, P.C.
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (215) 985-9177
Fax:    (215) 985-4169
Email: rgolomb@golombhonik.com
        kgrunfeld@golombhonik.com

Joseph "Jay" H. Aughtman, Esquire
Aughtman Law Firm, LLC
1722 Platt Place
Montgomery, AL 36117
Phone: (334) 215-9873
Fax:     (334) 213-5663
Email: jay@aughtmanlaw.com

Aaron C. Hemmings, Esquire
Hemmings & Stevens, P.L.L.C
5540 McNeely Drive, Suite 202
Raleigh, NC 27612
Phone: (919) 277-0161
Fax:     (919) 277-0162
Email: ahemmings@hemmingsandstevens.com

*Attorneys for Plaintiffs and the Classes*

Dated:  June 29, 2016