IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| JOHN ROBERT BEGLEY and | ) | |
| CARRIE BELL BEGLEY, on behalf | ) | |
| of themselves and all others similarly | ) | |
| situated, | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO. 3:16-cv-00149-MCR-CJK |
| | ) | |
| v. | ) | |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OCWEN LOAN SERVICING, LLC'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

Brian Alexander Wahl, Florida Bar
No.  0095777
Michael R. Pennington (*pro hac vice*)
BRADLEY ARANT BOULT
CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone:  (205) 521-8000
Facsimile: (205) 521-8800

Michael B. Colgan, Florida Bar No.
191383
BRADLEY ARANT BOULT
CUMMINGS LLP
100 S. Ashley Drive, Suite 1300
Tampa, FL 33602
Telephone:  (813) 229-3333
Facsimile:  (813) 229-5946

*Attorneys for Defendant Ocwen Loan Servicing, LLC*

## LOCAL RULE 7.1(K) REQUEST FOR ORAL ARGUMENT

Defendant Ocwen Loan Servicing, LLC ("Ocwen") hereby requests oral argument on this motion pursuant to Local Rule 7.1(D).  It is estimated that oral argument will require approximately one hour.


## LOCAL RULE 7.1(F) WORD LIMIT CERTIFICATION

Ocwen hereby certifies, pursuant to the word count function of the word-processing system used to prepare this motion, that this motion and its incorporated memorandum, including all headings, footnotes, and quotations, but excluding the case style, signature block, and certificate of service, contain 7,480 words.

## <u>MOTION AND MEMORANDUM OF LAW</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Ocwen hereby moves to dismiss Plaintiffs' First Amended Class Action Complaint (Doc. 18, the "Amended Complaint") with prejudice.

## INTRODUCTION

This is a putative class action alleging that Ocwen failed to properly apply "excess" payments made by the Plaintiffs John and Carrie Begley (hereinafter, "Plaintiffs") and other mortgagors to curtail the principal balances due under their loans.  Plaintiffs originally filed suit on April 6, 2016.  In the original Complaint (Doc. 1), Plaintiffs alleged that, since October 2012, they have been paying one half of their monthly mortgage payment every two weeks, which has resulted in the payment of the equivalent of thirteen full monthly payments per year, one more than is otherwise required by Plaintiffs' mortgage and promissory note.   Plaintiffs contended that Ocwen improperly failed to apply this extra, or "excess," payment to curtail the principal balance due under the loan, which has resulted in the accrual of too much interest.  Plaintiffs sought damages for:  (1) breach of contract; (2) breach of an implied duty of good faith and fair dealing; (3) unjust enrichment, based not on the "excess" payments themselves but on the allegation that Ocwen earned interest on those "excess" payments; (4) negligence; and (5) a violation of Florida's Deceptive and Unfair Trade Practices Act (the "FDUTPA").

On June 13, 2016, Ocwen moved to dismiss the Complaint in its entirety for failure to state a claim.  Doc. 9.  Ocwen argued that Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing failed because Ocwen is not a party to the promissory note or mortgage that were alleged to have been breached.  Ocwen argued that Plaintiffs' unjust enrichment claim failed because the purported benefit that Ocwen "unjustly" received—interest on Plaintiffs' "excess" payments—was not provided directly by Plaintiffs, as required by Florida law.  As to the negligence claim, Ocwen argued that Plaintiffs failed to plausibly allege that Ocwen breached an independent legal duty.  To the contrary, the only "duty" that was allegedly breached arose from Plaintiffs' mortgage and promissory note, but the law is clear that a negligence claim cannot arise from the breach of a contractual duty.  Finally, Ocwen argued that Plaintiffs could not state a claim under the FDUTPA because the FDUTPA does not apply to mortgage servicing.

On June 27, 2016, Plaintiffs filed the Amended Complaint, which added Primary Residential Mortgage Inc. ("PRMI"), the originator of Plaintiffs' promissory note and mortgage, as a defendant, and made a series of minor tweaks, presumably in an attempt to correct the original Complaint's numerous deficiencies.  But the Amended Complaint remains fatally deficient.  With respect to their breach of contract and breach of implied covenant claims, Plaintiffs attempt to allege that

2

Ocwen is, in fact, a party to their promissory note and mortgage, having received them in an "assignment" from GMAC Mortgage Corporation ("GMAC"), the original mortgage servicer.  Am. Complt. ¶¶ 34-36.  But in support of that allegation, Plaintiffs cite a February 7, 2013 "notice" from Ocwen and GMAC to them that in fact contradicts the allegation.  *See* Am. Complt., Ex. E.  Nowhere in that notice does Ocwen assert that it had become a party to the mortgage and promissory note or otherwise assumed ownership of them.  To the contrary, the notice states only that "[t]he *servicing* of [Plaintiffs'] mortgage loan, that is, *the right to collect payments from you*, is transferring from your current *servicer*, [GMAC] to your new *servicer*, [Ocwen]."  *Id.*, Ex. E at 1 (emphasis added).  Accordingly, Plaintiffs' allegation that Ocwen is a party to the promissory note and mortgage cannot be credited; Ocwen is simply the servicer of Plaintiffs' mortgage.  As courts around the country have recognized, mortgage servicers cannot be sued for breach of contract or breach of the implied covenant where there is no contractual privity between them and the mortgagor.

As to their unjust enrichment claim, Plaintiffs add the allegation that by placing the "excess" payments temporarily in "suspense," rather than immediately applying them to curtail the principal, the loan became "more secure."  Am. Complt. ¶ 88.  In other words, Plaintiffs seem to be alleging that each "excess" payment was, in a sense, a source of additional cash collateral on the loan during the temporary

3

period of time that it was placed in suspense.  (As Plaintiffs allege, the "excess" payments leave "suspense" and are applied to the loan once "additional funds are received to equal a full monthly mortgage payment," *id*. ¶ 19, *i.e.*, when the Plaintiffs next bi-weekly payment arrives, two weeks later.)   But Ocwen is not a party to the promissory note, and thus gains nothing, unjustly or otherwise, from the lender being made "more secure."  Moreover, Plaintiffs fail to explain how the lender would be better off by treating an "excess" payment as "more security" for two weeks rather than simply immediately applying the "excess" payment to pay down the outstanding loan balance.

Plaintiffs attempt to salvage their negligence claim by alleging that "Ocwen owes [them] a duty of care."  Am. Complt. ¶ 101.  But such a bare, legal conclusion is not sufficient; Plaintiffs must allege *facts* that make clear that Ocwen owed them a legal duty.  They have failed to do so.  As for their FDUTPA claim, Plaintiffs allege that "Ocwen also regularly solicits loan modifications of home mortgage loans from borrowers."  *Id*. ¶ 119.  But that allegation is irrelevant.  Plaintiffs do not allege that Ocwen solicited a loan modification from them, nor do they otherwise challenge Ocwen's purported practice of soliciting loan modifications.  All they challenge is Ocwen's alleged failure to properly apply their bi-weekly payments.  The application of payments is the paradigmatic example of "mortgage servicing," and it thus cannot be challenged under the FDUTPA.  Finally, Plaintiffs add a conversion claim, but

fail to adequately allege the elements of conversion.  The Amended Complaint must be dismissed in its entirety.

## FACTUAL ALLEGATIONS

On May 12, 2006, Plaintiffs Robert and Carrie Begley obtained a loan from PRMI for the purchase of a home, which was documented by a promissory note executed that day (the "Note").  Am. Complt. ¶ 25, Ex. B.  Simultaneously, Plaintiffs executed a Mortgage, granting a security interest in their home to PRMI.  *Id.* ¶ 25, Ex. A.[1]  The Mortgage included a definition of a "Loan Servicer" as an entity "that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations" and provided that the identity of the "Loan Servicer" could change.  *Id.*, Ex. A ¶ 20.  Pursuant to the Note and Mortgage, Plaintiffs' monthly payment was $3,372.71.  *Id.* ¶ 27, Ex. B.

Citing pages 23 and 37 of the Mortgage, the Complaint alleges that immediately after execution of the Mortgage and Note, GMAC Mortgage Corporation ("GMAC") became the servicer of the Mortgage.  *See id.* ¶ 26.  In particular, PRMI provided Plaintiffs with a Notice of Assignment, Sale, or Transfer of Servicing Rights, which stated, in relevant part:

---

[1] This Court may properly consider the exhibits to the Complaint, including the Mortgage and the Note, in ruling on this Motion.  *See F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) ("At the motion-to-dismiss stage, we consider the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments.").

> You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from PRIMARY RESIDENTIAL MORTGAGE INC. to GMAC Mortgage Corporation, effective with your first payment.  The assignment, sale or transfer of the servicing of your mortgage does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

*Id.*, Ex. A at 37.  Importantly, the Complaint does not allege that GMAC became Plaintiffs' lender, only the mortgage servicer.  Mortgage servicers are not lenders; they collect payments from mortgagors on behalf of lenders.  *See id.*, Ex. A ¶ 20

In 2012, Plaintiffs allege they received a solicitation from GMAC to participate in a "bi-weekly accelerated mortgage payoff program," wherein Plaintiffs would pay half of their monthly mortgage payment on a bi-weekly basis, rather than the full monthly payment amount, resulting in thirteen full monthly payments per year.  *Id.* ¶¶ 28-29.  According to Plaintiffs, "[t]he purpose of the program was to reduce the principal balance of the loan at an accelerated rate, thereby reducing the amount of interest paid by Plaintiffs."  *Id.* ¶ 30.  In particular, for months wherein Plaintiffs made three bi-weekly payments, the third payment (hereinafter referred to as an "excess" payment) would be applied to curtail principal, thereby reducing the total amount of interest that would be due under the life of the loan.  *See id.* ¶ 40. On October 19, 2012, Plaintiffs began making bi-weekly payments in accordance

with the program. *Id.* ¶ 32. Thus, every two weeks, Plaintiffs' bank account was debited $1,686.36. *Id*.

In February 2013, GMAC provided written notice that it was "the subject of a bankruptcy proceeding." *Id*. ¶ 33 (citing *id.*, Ex. E). Plaintiffs allege that the "notice further indicated Plaintiffs' mortgage and note [were] transferred to Ocwen" and that "[u]pon the assignment, Ocwen became a party to the mortgage and note contracts, or otherwise assumed an ownership interest in them." *Id*. ¶¶ 34, 36 (citing *id*., Ex. E). However, those allegations are inconsistent with the notice, which Plaintiffs attached as Exhibit E to the Amended Complaint. They are also inconsistent with the original Complaint. *See* Doc. 1 ¶ 33. The notice does not assert that Ocwen became a party to the Mortgage or Note, or otherwise assumed ownership of them. To the contrary, the notice states only that "[t]he *servicing* of [Plaintiffs'] mortgage loan, that is, *the right to collect payments from you*, is transferring from your current *servicer*, [GMAC] to your new *servicer*, [Ocwen]." Am. Complt., Ex. E at 1 (emphasis added). In other words, the notice is consistent with Plaintiffs' allegation in the original Complaint that Ocwen merely took over from GMAC as the "servicer" of Plaintiffs' Mortgage, *i.e.*, as the entity that would be collecting Plaintiffs' payments on behalf of the lender. *See* Doc. 1 ¶ 33.

Plaintiffs allege that Ocwen thereafter "failed or refused to apply [their] excess payments" (*i.e.*, the third "bi-weekly" payment in certain months) to curtail

the principal balance. *Id.* ¶ 37. Instead, Ocwen ostensibly treated the "excess" payment as an early, partial payment for the following month, which purportedly "had the effect of paying Ocwen early but did not reduce principal in an accelerated manner." *Id.* ¶ 40. According to Plaintiffs, this "deprived [Plaintiffs] of the reduction in principal and interest at the time of the excess payment, thereby causing more funds than required to be applied to interest on each future payment." *Id.* ¶ 41. Plaintiffs allege that the "excess" payments were put in "suspense" temporarily, "until additional funds [were] received to equal a full monthly mortgage payment," *i.e.*, until the next bi-weekly payment arrived two weeks later. *Id.* ¶ 19. Plaintiffs also allege that Ocwen the "excess" payments in "suspense" were put into an interest-bearing account for which Ocwen retains the proceeds. *Id.* ¶ 42.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). Allegations that are mere "legal conclusions," without factual support, must be disregarded. *See Iqbal*, 556 U.S. at 664. In addition, allegations that are contradicted by documents referred to and relied on in the complaint cannot be credited. *See Infante v. Bank of America Corp.*, 468 F. App'x 918, 921 n.2 (11th Cir. 2012); *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).

**I.** **Plaintiffs' Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing Claims Fail Because Ocwen Is Not a Party to the Mortgage or the Note.**

Plaintiffs first allege that the Mortgage and Note require Ocwen to apply Plaintiffs' "excess" payments to curtail the principal remaining under the loan and contend that Ocwen's alleged failure to so apply the "excess" payments constituted a breach of contract (Count I) and a breach of the implied covenant of good faith and fair dealing (Count III). *See* Am. Complt. ¶¶ 52-63, 75-79. These claims should be dismissed because the Amended Complaint fails to adequately allege that Ocwen is

(or ever was) a party to the Mortgage and Note and Plaintiffs have failed to allege any facts that otherwise would put Plaintiffs in contractual privity with Ocwen.

Under Florida law, "a contract does not bind one who is not a party to the contract, or who has not … agreed to accept its terms." *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1073 (11th Cir. 2003). Accordingly, to plead a breach of contract claim, a plaintiff must allege the existence of a valid contract between it and the defendant. *See PNC Bank, Nat'l Ass'n v. Branch Banking and Trust Co.*, No. 8:08-CV-610-T-27TGW, 2009 WL 3754390, at *7 (M.D. Fla. Nov. 6, 2009); *Blue Supply Corp. v. Novos Electro Mech., Inc.*, 990 So. 2d 1157, 1159 (Fla. 3d DCA 2008) (dismissing claims arising under contract where defendant was not party to contract). Likewise, the *sine qua non* of an implied covenant claim is a contractual relationship between plaintiff and defendant. *See Bruggemann v. Amacore Group, Inc.*, 8:09-cv-2562, 2011 WL 2145515, at *2 (M.D. Fla. May 31, 2011); *Centurion Air Cargo v. UPS Co.*, 420 F.3d 1146, 1151-52 (11th Cir. 2005) ("A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation.") (quotations omitted); *see also Stallworth v. Hartford Ins. Co.*, No. 3:06-cv-89, 2006 WL 2711597, at *7 (N.D. Fla. Sept. 19, 2006) (holding that defendant was not "liable under either a breach of contract claim or a claim for breach of the

implied covenant of good faith and fair dealing because he was not a party to the insurance contract").

Here, Ocwen is not a party to the Mortgage or Note:  those agreements are between Plaintiffs and PRMI.  *See* Am. Complt., Exs. A, B.  Although Plaintiffs allege in the Amended Complaint that the Mortgage and Note were "transferred to Ocwen," and that Ocwen "became a party to" both as a result (*id.* ¶¶ 34-36), those allegations are directly contradicted by the very document they are based on, the February 7, 2013 notice from Ocwen and GMAC to Plaintiffs, and thus cannot be credited.  *See Infante*, 468 F. App'x at 921 n.2.    In particular, as explained above, the notice makes clear that Ocwen became the *servicer* of Plaintiffs' Mortgage, *i.e.*, the entity that would be collecting payments.  *Id.*, Ex. E at 1.  There is nothing in the notice that asserts that Ocwen was becoming a party to or otherwise assuming liability under either the Note or the Mortgage.  Instead, Ocwen's role is simply that of mortgage servicer.  *Id.* ¶ 31.  As a significant majority of courts have concluded, where a mortgage servicer is neither a party to the underlying mortgage nor has expressly assumed liability, it is not in privity of contract with the mortgagor and cannot be sued for breach of that mortgage.[2]  *See, e.g.*, *Bank of America, N.A. v.*

---

[2] Mortgage servicers generally are the agents of lenders.  *See Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 28 (D.D.C. 2014).  It is well-settled that an agent cannot be found liable for its principal's contractual obligations, even if that agent negotiated or was charged by the principal with performing those obligations.  *See Johnson v. Elizabeth R. Wellborn, P.A.*, 418 F. App'x 809, 816 n.8 (11th Cir.

*Zaskey*, No. 9:15-cv-81325, 2016 WL 2897410, at *6-7 (S.D. Fla. May 18, 2016) (dismissing breach of implied covenant of good faith and fair dealing claim against mortgage servicer because there were no allegations of privity between the borrower and the mortgage servicer); *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1052 (N.D. Cal. 2013) (applying Florida law and dismissing breach of contract claim against mortgage servicer because the servicer "was not a party to the mortgage agreement"); *Taylor v. Homecomings Fin., LLC*, 738 F. Supp. 2d 1257, 1267-68 (N.D. Fla. 2010) (dismissing breach of contract claim against mortgage servicer because complaint failed to allege "anything other than the agent for a disclosed principal servicing a contract according to its terms"); *Edwards*, 24 F. Supp. 3d at 28 (dismissing breach of contract and breach of implied covenant of good faith and fair dealing claims against loan servicer because there was "no contractual relationship or privity with the borrower"); *Alden v. Seterus, Inc.*, No. 12-01551, 2013 WL 1326320, at *2 (D. Nev. Mar. 29, 2013) (granting summary judgment in favor of mortgage servicer as to borrower's breach of contract claim because the servicer was not a party to the mortgage); *Cohen v. Mortgage Elec. Registration*

---

2011) (citing *Babul v. Golden Fuel, Inc.*, 990 So. 2d 680, 683 (Fla. 2d DCA 2008)); *Aero Techs., LLC v. Lockton Cos. Int'l, Ltd.*, No. 09-20610-CIV, 2011 WL 7657475, at *3 (S.D. Fla. Apr. 25, 2011) ("Under Florida law, an authorized agent acting for a disclosed principal may not be held personally liable to the other contracting party, in the absence of circumstances showing that personal responsibility was intended to be incurred."), *aff'd*, 467 F. App'x 824 (11th Cir. 2012).

*Sys., Inc.*, Civ. No. 08-1394 ADM/JSM, 2009 WL 4578308, at *4 (D. Minn. Dec. 1, 2009) (same); *Schmidt v. Nat'l City Corp.*, No. 3:06-cv-209, 2008 WL 5248706, at *7 (E.D. Tenn. Dec. 17, 2008) (same); *Munson v. Countrywide Home Loans, Inc.*, No. 08-13244, 2008 WL 5381866, at *2-3 (E.D. Mich. Dec. 17, 2008) (dismissing breach of contract claim against mortgage servicer because there were no allegations of contractual privity).[3]

The fact that the February 7, 2013 notice asserts that the "servicing" of the Mortgage was "transferred" to Ocwen (*see* Am. Complt., Ex. E at 1) is irrelevant because there are no well-pleaded allegations that Ocwen assumed any contractual obligations to the Plaintiffs as part of that transfer.  *Englert v. Nationstar Mortgage, Inc.*, No. 1:15-cv-303-GBL-MSN, 2015 WL 9275662 (E.D. Va. Dec. 18, 2015), is instructive.  In that case, the mortgagor argued that it had contractual privity with the mortgage servicer even though the servicer was not a party to the mortgage.

---

[3] *See also, e.g.*, *Perron v. JP Morgan Chase Bank, N.A.*, No. 1:12-cv-01853, 2014 WL 931897, at *4 (S.D. Ind. Mar. 10, 2014) ("[T]he [borrowers] have failed to cite to any case law … in which contractual privity between the borrower and the holder of a note was imputed to the loan servicer."); *Moore v. Mortgage Elec. Reg. Sys., Inc.*, 848 F. Supp. 2d 107, 127-28 (D.N.H. 2012) (dismissing breach of implied covenant claim against mortgage servicer for failure to allege contractual privity between mortgagor and servicer); *Conder v. Home Sav. Of Am.*, 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010) ("The fact that [the servicer] entered into a contract with [the lender] to service Plaintiff's loan does not create contractual privity between [the servicer] and Plaintiff."); *Lomboy v. SCME Mortgage Bankers*, No. C-09-1160, 2009 WL 1457738, at *5 (N.D. Cal. May 26, 2009) (the servicing function did not "imply the existence of a contract [between the servicer and borrower]").

According to the mortgagor, the contractual privity was evidenced by a "Notice of Assignment" substantially similar to the "Notice of Assignment, Sale, or Transfer of Servicing Rights" in this case, which stated that "the servicing of [the] mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred" to the mortgage servicer. *Id*. at *3-4. The court disagreed, finding, as a matter of law, that the "'Notice of Assignment' only assigned Defendants an obligation to service the loan" but did not create contractual obligations from the mortgage servicer to the mortgagor that could form the basis of a breach of contract action. *See id.* at *1, 3-4. In other words, the assignment to the servicer of a right to receive payments did not entail the assignment of any of the lender's obligations under the mortgage or note.[4]

---

[4] Similarly, in *Cohen*, the court concluded that language in the mortgage providing that "[i]f the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer" did not create contractual privity between the borrower and servicer. 2009 WL 4578308, at *4. And in *Kehoe v. Aurora Loan Services, LLC*, No. 3:10-cv-00256, 2010 WL 4286331 (D. Nev. Oct. 20, 2010), the mortgagors alleged that the mortgage servicer had "assumed" the duties as servicer of the note and enforcer of the deed and trust and contended that, as result, "[the servicer] assumed any and all duties and obligations that ran between the [borrowers] and Magnus (the original lender)." *Id.* at *7-8. In dismissing the claim, the court noted that "courts have held that a loan servicer, such as Aurora, is not a party to the deed of trust;" "the fact that Aurora serviced Plaintiff's loan does not create contractual privity between Aurora and the Plaintiffs." *Id.* at *8.

The same reasoning controls here.  Because Ocwen is not and was never a party to the Mortgage or Note and is not adequately alleged to have expressly assumed the obligations of those contracts, the breach of contract and breach of implied covenant claims must be dismissed.  *See Zaskey*, 2016 WL 2897410, at *6-7; *Englert*, 2015 WL 9275662 at *3-4.

## II. Plaintiffs Fail to State an Unjust Enrichment Claim Against Ocwen.

Plaintiffs' unjust enrichment claim (Count V) also fails.  A claim for unjust enrichment has three elements:  (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof.  *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)).

In addition, Florida has a "direct payment" requirement for unjust enrichment claims, which requires that the plaintiff *directly* confer the benefit in question upon the defendant.  *See Cireo-Loudon v. Green Tree Servicing, LLC*, Case No. 14-21384, 2014 WL 4219587, at *4-5 (S.D. Fla. Aug. 25, 2014) (dismissing unjust enrichment claim where the plaintiff failed to allege facts to show that the mortgagor had directly conferred a benefit on the defendant); *American Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007) ("The Plaintiffs must show they directly

conferred a benefit on the defendants."). It is not enough for a plaintiff to allege that the defendant was enriched; the plaintiff must allege that he *directly* conferred the benefit in question onto the defendant. *Circeo-Loudon*, 2014 WL 4219587, at *5; *Virgilio*, 680 F.3d at 1337 (affirming dismissal of unjust enrichment claim where the allegedly "unjust" benefit was provided by a third party, not the plaintiff).

Here, Plaintiffs contend that Ocwen obtained two "benefits" from its purported failure to apply the "excess" payments to curtail the principal due under the loan: (1) interest that Ocwen allegedly earned on the "excess" payments while temporarily holding them in suspense and (2) "increased security" on the loan. Am. Complt. ¶¶ 42, 86, 88.[5] The first purported "benefit"—the interest that Ocwen

---

[5] Plaintiffs also allege that Ocwen has received "increased interest income." *See* Am. Complt. ¶ 87. By that, Plaintiffs appear to be referring to the fact that the "interest" component of each bi-weekly mortgage payment is higher than it would be if Ocwen had credited the excess payments to curtail principal (thus reducing the total amount of interest). But the fact that the "interest" component of Plaintiffs' mortgage payment is higher than it otherwise would be is irrelevant, because there are no allegations that Plaintiffs have actually paid more *in total* than they otherwise would have paid if Ocwen had been applying the "excess" payments to curtail principal. To the contrary, the Complaint makes clear that the Plaintiffs continue to pay $1,686.36 on a bi-weekly basis, just as they had done prior to Ocwen becoming their mortgage servicer. *See* Complt. ¶ 30. Because Plaintiffs have not yet paid more than they would have paid in the but-for world, they have not suffered any injury based on the payments they have made to date and thus do not have standing to seek relief on this basis. *See Iglesia Cristiana El Buen Samaritano, Inc. v. Guardian Servs., LLC*, No. 11-21888-CIV, 2011 WL 5854640, at *4 (S.D. Fla. Nov. 21, 2011) (dismissing unjust enrichment claim for lack of standing where the claim was based on speculative outcome of mortgage proceedings, because "defendants have not alleged that they have suffered any injury at the present time or that an injury is 'imminent', justifying an unjust enrichment claim"); *Sandlin v. Shapiro &*

allegedly earned on the "excess" payments—was not "directly" conferred by Plaintiffs on Ocwen.  To the extent Ocwen actually placed the payments in an interest bearing account during the two-week period within which they were allegedly put in "suspense," any interest earned would have been provided by the institution with whom Ocwen held the "interest-bearing account."  Accordingly, this "benefit" fails Florida's "direct payment" requirement and cannot be the basis of an unjust enrichment claim.  *See Virgilio*, 680 F.3d at 1337.

As for the alternative "benefit," a purported temporary increase in the "security" on the loan, the Amended Complaint does not allege how Ocwen, a mortgage *servicer* who collects payments on behalf of the lender and not itself, would benefit from the *lender* having increased "security" on the loan.  *See* Am. Complt., Ex. A ¶ 20.[6]  Indeed, the lender's increased security would not enrich

---

*Fishman*, 168 F.R.D. 662, 667-68 (M.D. Fla. 1996) (plaintiffs who did not pay alleged unauthorized fee added to mortgage loan had suffered no actual personal injury and lacked standing to act as class representatives).

[6] To the extent Plaintiffs contend that the unjust enrichment claim is in fact based on the "excess" payments themselves, Plaintiffs again fail to appreciate that Ocwen is merely the servicer of the loan and the payments it receives under the loan are received for the benefit of the lender for whom Ocwen acts as servicer.  *See* Am. Complt., Ex. A ¶ 20.  The Amended Complaint does not adequately allege otherwise.  Thus, if the "excess" payments benefit anyone, it would be the lender, not Ocwen.  *See A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, No. 6:14-cv-310, 2015 WL 304048, at *6 (M.D. Fla. Jan. 21, 2015) (dismissing unjust enrichment claim where plaintiff failed to allege that it had conferred a benefit on the defendant that was wrongfully retained); *Edwards*, 24 F. Supp. 2d at 29 (dismissing unjust enrichment claim against mortgage servicer because mortgage servicer had "no

Ocwen, unjustly or otherwise.  In any event, Plaintiffs also fail to explain why the lender would be "enriched" by treating an "excess" payment as additional security, rather than applying the "excess" payment to reduce the principal due under the loan. It defies credulity that a lender would prefer a temporary increase in its security on a loan over an equivalent reduction in the outstanding amount due under the loan. Those situations are effectively the same.[7]

---

interest in the loan itself" and "was not beneficiary of the note or deed of trust and therefore retained none of the 'wrongful benefits' that plaintiff allege[d] in her complaint").

[7] Further, to the extent any of Plaintiffs' legal claims for breach of contract, breach of the implied covenant, or violation of FDUTPA survive this dismissal motion, the Court should nonetheless dismiss Plaintiffs' unjust enrichment claim because it "is well settled in Florida that unjust enrichment is an equitable remedy" that is "not available where there is an adequate legal remedy."  *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).  A plaintiff has an adequate remedy at law where his unjust enrichment claim "seek[s] recovery for the exact same wrongful conduct as in" his legal claims.  *See Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236-37 (S.D. Fla. 2007) (dismissing unjust enrichment claim based on the same wrongful conduct as plaintiffs' consumer fraud act claim); *Am Honda Motor Corp.*, 390 F. Supp. 2d at 1178 ("The [d]efendants' quasi contract claims is predicated on the same set of allegations supporting their claims under FUTSA and FDUTPA.  Accordingly, because an adequate remedy exists at law, the Defendants have not stated a claim upon which relief may be granted for … unjust enrichment.").  Here, all of Plaintiffs' claims against Ocwen are based on the same alleged misconduct; as such, to the extent that any of Plaintiffs' legal claims survive dismissal, the unjust enrichment claim should be dismissed.

### III. Plaintiffs' Negligence Claim Fails Because Ocwen Does Not Owe Plaintiffs a Legal Duty.

Plaintiffs' negligence claim (Count VII) should be dismissed because Plaintiffs have failed to allege *facts* plausibly showing that Ocwen owed them any legal duty.  "To maintain an action for negligence, a plaintiff must establish that the defendant owed a duty, that the defendant breached that duty, and that his breach [proximately] caused the plaintiff damages." *Fla. Dep't of Corrections v. Abril*, 969 So. 2d 201, 204-05 (Fla. 2007).  Whether a duty exists is a question of law, "not a factual question for the jury to decide." *Lincoln v. Fla. Gas Transmission Co. LLC*, 608 F. App'x 721, 723 (11th Cir. 2016) (citing *McCain v. Fla Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992)).  To survive a motion to dismiss, a complaint must contain factual, non-conclusory allegations sufficient to plausibly show the existence of such a duty.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. 544, 555-56.

The case law is clear that there is no duty of care arising from the relationship between a mortgagor and a mortgage servicer.  *See, e.g.*, *Bojorquez v. Gutierrez*, No. C 09-03684, 2010 WL 1223144, at *6-7 (N.D. Cal. Mar. 25, 2010) (dismissing borrower's negligence claim against loan servicer because loan servicers do not owe duties of care to borrowers); *Lawrence v. Aurora Loan Services LLC*, CV F 09-1598 LJO DLB, 2010 WL 364276, at *9 (E.D. Cal. Jan. 25, 2010) (same); *Smith-Tyler v. Bank of America, N.A.*, 992 F. Supp. 2d 1277, 1284 (N.D. Ga. 2014) (borrower failed to establish a legal duty that was breached by mortgage servicer).  That's because a

mortgage is defined by contract—*i.e.*, the mortgage agreement itself—and the servicer's obligation to service that mortgage is defined by the contract between the servicer and lender.  It is axiomatic in Florida and elsewhere that a negligence claim "cannot stem from a contractual relationship."  *See Tiara Condo. Ass'n Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 408-09 (Fla. 2013) (Pariente, J., concurring).; *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 914 (S.D. Ohio 2013) (granting judgment on the pleadings against plaintiffs' negligent mortgage servicing claim because any duties related to the service of the mortgage arose from the framework of the mortgage and note).  "It is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such a breach can constitute negligence."  *Tiara Condo.*, 110 So. 3d at 408-09.

Here, the only purported "duty" that Ocwen breached was the alleged requirement in the Mortgage and Note that the "excess" payments be applied to "reduce the principal balance" of the loan.  *See* Am. Complt. ¶ 100.  In other words, the purported duty that was breached was a contractual duty created by the contract between Plaintiffs and their lender, making Plaintiffs' negligence claim identical to their breach of contract claim.  Although Plaintiffs in their Amended Complaint make the conclusory allegation that Ocwen owed them "a duty of care," that legal conclusion must be disregarded.  *See Iqbal*, 556 U.S. at 664.  Plaintiffs do not allege

*facts* indicating that Ocwen owed them some *additional* duty of care beyond what is defined in the Mortgage and Note, and thus there is no basis for a standalone negligence claim.  *See Tiara Condo.*, 110 So. 3d at 408-09.

*Zaskey*, 2016 WL 2897410, is exactly on point.  There, the plaintiff borrowers brought, *inter alia*, a negligence claim against their mortgage servicer based on the mortgage servicer's purported failure to properly obtain and account for the proceeds from a short sale of the plaintiffs' property.  *Id.* at *1, 13.  In dismissing the negligence claim, the court rejected plaintiffs' contention that the mortgage servicer owed plaintiffs an independent legal duty.  As the court made clear, the purported duties to obtain and account for the proceeds from the short sale arose from the plaintiffs' contractual relationship with the lender and did "not give rise to an independent cause of action for negligence."  *Id.* at *14.  Notably, the court dismissed the negligence claim as to the mortgage servicer despite the fact that the mortgage servicer, like Ocwen here, was not a party to—and thus could not be sued based on the breach of—the relevant contractual agreements.  *See id.* at *6-7.[8]  For the same reason, Plaintiffs' negligence claim should be dismissed.

---

[8] The Eleventh Circuit's decision in *Coker v. Dollar*, 846 F.2d 1302 (11th Cir. 1988), is also instructive.  In that case, the plaintiff had entered into a contract with a third party pursuant to which the third party was supposed to set up an escrow account. The third party instructed its agent, the defendant, to set up the account, but the agent failed to do so.  The district court found the defendant agent liable for negligently failing to set up an escrow account for the plaintiff.  *See id.* at 1304.  In reversing the judgment, the Eleventh Circuit recognized that the defendant, as agent for the third

**IV.    Plaintiffs Fail to State a Claim Under the FDUTPA Because the FDUTPA Does Not Apply to Mortgage Servicing.**

Plaintiffs also contend that Ocwen's alleged failure to apply their "excess" payments to curtail the principal balance of the loan violated the FDUTPA (Count IX).  However, it has been widely held that the FDUTPA does not apply to mortgage servicing and this claim should be dismissed.[9]

The FDUTPA outlaws "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices *in the conduct of any trade or commerce*."  Fla. Stat. § 501.204(1) (emphasis added).  The statute defines "trade or commerce" as, in relevant part, "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service or any property, whether tangible or intangible, or any other article commodity, or thin of value, wherever situated."  Fla. Stat. § 501.203(8).  As numerous courts have recognized, mortgage servicing does not constitute "trade or commerce" for

---

party, "had an obligation to carry out [the third party's] instructions, and that the [plaintiffs] were injured by his failure to perform that obligation."  *Id*.  However, the court found no reason to depart from the "general rule" that "an agent is not liable for pecuniary harm to a person other than his principal that results from his failure adequately to perform his duties to his principal."  *Id*. (citing Restatement (Second) of Agency §§ 352, 357).

[9] The pleading standard for a FDUTPA claim, which sounds in fraud, is even more demanding than the pleading standard for Plaintiffs' other claims:  Plaintiffs "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

FDUTPA purposes.  *See, e.g.*, *Zaskey*, 2016 WL 2897410, at *10-11 (recognizing that the FDUTPA generally does not apply to mortgage servicing); *Benjamin v. CitiMortgage, Inc.*, No. 12-62291-CIV, 2013 WL 1891284, at *4-5 (S.D. Fla. May 6, 2013) (mortgage servicing does not constitute "trade or commerce" for FDUTPA purposes); *see also Trent v. Mortgage Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1365 n.12 (M.D. Fla. 2007) (finding that efforts by a mortgage lender's nominee to foreclose on the mortgaged property were not "trade or commerce" under the FDUTPA).  As the court in *Benjamin* explained, "loan servicer[s do] not 'advertise, solicit, provide, offer or distribute' anything to the plaintiffs" and thus do not "fall within the purview of trade or commerce."  *Benjamin*, 2013 WL 1891284, at *5.  They simply collect mortgage payments on behalf of the lender.[10]

Here, the only alleged misconduct is Ocwen's purported failure to properly apply Plaintiffs' "excess" payments to curtail the principal balance of the loan.  The

---

[10] Similarly, courts have concluded that the FDUTPA does not apply to debt collection activities in general.  *See, e.g.*, *Alhassid v. Bank of America, N.A.*, 60 F. Supp. 3d 1302, 1323-24 (S.D. Fla. 2014) (recognizing that the FDUTPA does not apply to loan collection activities); *Acosta v. James A. Gustino, P.A.*, No. 6:11-cv-1266, 2012 WL 4052245, at *1 (M.D. Fla. Sept. 13, 2012) (defendants "were not engaged in 'trade or commerce' when they sent demand letters and otherwise engaged in their debt collection efforts" because "[a]n attempt to collect a debt by exercising one's legal remedies does not constitute 'advertising, soliciting, providing, offering, or distributing,' as those terms are used in Fla. Stat. § 501.203(8)"); *Williams v. Nationwide Credit, Inc.*, 890 F. Supp. 2d 1319, 1322 (S.D. Fla. 2012) ("[T]he Court agrees with the other courts that have addressed debt collection and finds that Nationwide's debt collection activities do not give rise to a FDUTPA claim.").

application of payments is nothing more than the routine servicing of Plaintiffs' Mortgage, not subject to the FDUTPA. *See Benjamin*, 2013 WL 1891284, at *4-5; *Trent*, 618 F. Supp. 2d at 1365 n.12. Plaintiffs attempt to avoid this result by alleging that Ocwen "*also* regularly solicits loan modifications of home mortgage loans." Am. Complt. ¶ 119 (emphasis added). But Ocwen's purported solicitation of loan modifications is not challenged here. All that is challenged is Ocwen's application of "excess" payments. Payment application is not the "advertise[ment], solicit[ation], provi[sion], offer[ing], or distribut[ion]" of any good or service, which means Ocwen's actions "do not qualify as 'trade or commerce' under the [FDUTPA]." *See Benjamin*, 2013 WL 1891284, at *4-5; *Trent*, 618 F. Supp. 2d at 1365 n.12. Count IX must be dismissed.

## V. Plaintiffs' Conversion Claim Should Be Dismissed.

Finally, Plaintiffs' conversion claim should be dismissed (Count X). Under Florida law, conversion is an "unauthorized act which deprives another of his property permanently or for an indefinite time." *Nat'l Union Fire Ins. Co. of Penn. v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir. 1985) (citing *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So. 2d 1157, 1160-61 (Fla. 3d DCA 1984)). The elements of a conversion claim are "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with [the plaintiff's] ownership therein." *Joe Hand Promotions, Inc. v. Creative Entertainment, LLC*,

978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013).  The element of an "act of dominion wrongfully asserted" cannot be established where the plaintiff grants permission to the defendant to possess the property.  *See Tulepan v. Roberts*, No. 14-cv-80574, 2015 WL 235441, at *5 (S.D. Fla. Jan. 16, 2015)

Here, Plaintiffs contend that Ocwen converted their "excess" payments by failing to immediately apply them to curtail the principal due under the Note.  Am. Complt. ¶ 132.  In other words, Plaintiffs contend that Ocwen converted money.  An action for conversion of money consists of:  (1) specific and identifiable money; (2) the plaintiff's possession of or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so.  *United States v. Bailey*, 288 F. Supp. 2d 1261, 1264 (M.D. Fla. 2003).

"The identification requirement ensures that a fund of money *actually exists to pay a specific debt owed* and the plaintiff 'is not merely transforming a contract dispute into a conversion claim.'" *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 272 (11th Cir. 2009) (emphasis in original) (citing *Allen v. Gordon*, 429 So. 2d 369, 371 (Fla. 1st DCA 1983)).  As the Eleventh Circuit and Florida courts have consistently held, "a conversion is not an appropriate means of vindicating a claim which essentially alleges breach of contract." *Misabec Mercantile, Inc. De Panama v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.*,

853 F.2d 834, 838 (11th Cir. 1988); *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990); *Advanced Surgical Techs., Inc. v. Automated Instruments, Inc.*, 777 F.2d 1504, 1507 (11th Cir. 1985); *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970).

Plaintiffs' claim for conversion fails for a number of reasons. First, Plaintiffs have not alleged that they ever made a demand that the "excess" payments be returned. Second, Plaintiffs' have not asserted a violation of a duty that exists outside of the contracts between Plaintiffs and the note holder and mortgagee. To succeed on a tort claim that is associated with a breach of contract, a plaintiff must allege the breach of a duty that is different from the duty that exists solely by virtue of the contract. *See Tiara Condo.*, 110 So. 3d at 408-09. What Plaintiffs owe on the Note, when Plaintiffs must make their payments, what amounts the payments must be, and how the payments are applied are all governed by the Note and Mortgage. Indeed, Plaintiffs' conversion claim is premised on the same alleged misconduct underlying their other claims: Ocwen's alleged failure to immediately apply their "excess" payments to curtail the principal balance due under the Note. *See* Am. Complt. ¶ 132. Thus, Plaintiffs' conversion claim is not independent of their breach of contract claim and should be dismissed with prejudice.

Finally, Plaintiffs cannot dispute that they owed the money that was paid on the Note and transferred it to Ocwen voluntarily. Accordingly, their payments

cannot be the subject of a conversion.  *See Hutchins v. Bank of Am., N.A.*, No. 13-cv-3242, 2013 WL 5800606, at *15 (N.D. Cal. Oct. 28, 2013) ("Assuming the loan is not void, Plaintiff had a contractual obligation to make payments on the loan. Plaintiff freely made such payments, thus relinquishing his possessory right to the funds."); *Kim Chun Chung v. JPMorgan Chase Bank, N.A.*, 975 F. Supp. 2d 1333, 1346-47 (N.D. Ga. 2013) ("Chase's failure to apply the payments to the Plaintiff's account did not constitute conversion.  Chase lawfully came into possession of the payments.").[11]  The conversion claim must be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Plaintiffs' Amended Complaint should be dismissed with prejudice in its entirety.

---

[11] *Cf. Carl v. Republic Security Bank*, 282 F. Supp. 2d 1358, 1371 (S.D. Fla. 2003) ("The evidence clearly establishes that under the applicable law related to banking, Mr. Carl had no property interest in the funds after they were transferred into the GWE account.  Therefore, under the facts as alleged in the complaint and based on the undisputed evidence in the record, plaintiff is unable to state a claim of conversion against Wachovia Bank."); *Matter of Lambillotte*, 17 B.R. 256, 258 (Bankr. M.D. Fla. 1982) ("[I]t is clear that once the Plaintiffs paid the $8,700 down payment it was no longer their property and could not be the subject of a conversion.").

This 18th day of July, 2016.     Respectfully submitted,

/s/ Brian Alexander Wahl
Brian Alexander Wahl, Florida Bar No. 0095777
Michael R. Pennington (*pro hac vice*)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone:  (205) 521-8000
Facsimile: (205) 521-8800


Michael B. Colgan, Florida Bar No. 191383
BRADLEY ARANT BOULT CUMMINGS LLP
100 S. Ashley Drive, Suite 1300
Tampa, FL 33602
Telephone:  (813) 229-3333
Facsimile:  (813) 229-5946

*Attorney for Defendant Ocwen Loan Servicing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to the following counsel of record:

Richard Moss Golomb
GOLOMB & HONIK PC
1515 Market Street, Suite 1100
Philadelphia, PA 19102
(215) 985-9177
rgolomb@golombhonik.com

Bryan Frederick Aylstock
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
17 E Main Street, Suite 200
Pensacola, FL 32502
(850) 916-7450
baylstock@awkolaw.com

Aaron C. Hemmings
HEMMINGS & STEVENS PLLC
P.O. Box 90698
Raleigh, NC 27675-0698
(919) 277-0161
ahemmings@hemmingsandstevens.com

/s/ Brian Alexander Wahl
Brian Alexander Wahl