# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**JOHN ROBERT BEGLEY and**
**CARRIE BELL BEGLEY, on behalf**
**of themselves and all others similarly**
**situated,**

     **Plaintiffs,**

**v.**                                  **Case No. 3:16cv149/MCR/CJK**

**OCWEN LOAN SERVICING, LLC,**

     **Defendant,**

_____/

## ORDER

This matter is before the Court on Plaintiffs' Motion for Final Approval of Class Action Settlement, ECF No. 58. For the reasons that follow, the Court finds that the motion is due to be **GRANTED** and the proposed settlement is **APPROVED**.

## I.    Background

Plaintiffs John Robert Begley and Carrie Bell Begley are residential mortgage borrowers whose loan was acquired in early 2013 by Defendant Ocwen Loan Servicing, LLC as part of a large portfolio of mortgage loans that were previously held and serviced by GMAC Mortgage Company ("GMAC"). A number of the former GMAC mortgage loans were enrolled in weekly or biweekly accelerated payoff programs administered by third-party ACI Worldwide, Inc. ("ACI"). Ocwen elected

to accept payments from former GMAC borrowers under the ACI weekly and biweekly plans, and also to continue making the ACI plans available for new enrollment by those borrowers.

The ACI plans were intended to provide borrowers with a systematic means of achieving accelerated loan principal reduction and reduced interest charges. Under the ACI weekly plan, one-quarter (1/4) of a full monthly payment was withdrawn from a borrower's bank account each week by ACI and sent to Ocwen; under the ACI biweekly plan, one-half (1/2) of a full monthly payment was withdrawn from a borrower's bank account by ACI and sent to Ocwen every two weeks. These payments were accumulated in a suspense account until they were sufficient to fund the payment of a full contractual monthly mortgage payment. Because the number of weeks in each month differ, there was an "extra" 1/2 payment under the ACI biweekly plan in two calendar months each year, and an "extra" 1/4 payment under the ACI weekly plan four times a year. The "extra" payments were supposed to be immediately applied to the principal balances of the respective loans, thereby helping the borrowers to reduce their loan balances more quickly than scheduled and producing compounded interest savings over the life of the loans.

Beginning in July 2013, Ocwen began migrating the servicing of the former GMAC loans from GMAC's loan servicing software to Ocwen's REALServicing software. The REALServicing software was not fully compatible with the ACI weekly

and biweekly payment plans.  As a result, many borrowers' ACI extra payments were, under certain conditions, applied towards future monthly contractual payments not yet due on their loans instead of towards the immediate reduction of the loans' principal balances.  This payment processing issue prevented borrowers from paying off their loans as quickly as contemplated by the ACI weekly and biweekly plans and also caused borrowers to pay more total interest over the life of their loans.

A total of 34,736 loans, involving 52,502 primary joint and/or co-borrowers, were enrolled in an ACI weekly or biweekly payment plan for some period of time while those loans were serviced by Ocwen on the REALServicing platform.  Each of the loans is potentially impacted by the extra payment processing issue.  Ocwen terminated all ACI programs effective February 1, 2017.

Plaintiffs John and Carrie Begley brought this action on behalf of themselves and other borrowers who were enrolled in the ACI programs during the relevant time period, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, negligence, conversion, and violation of the Florida Deceptive and Unfair Trade Practices Act.[1]  ECF No. 18.  Following a lengthy mediation process, the parties reached a proposed settlement agreement.[2]  *See* ECF No.

---

[1] Initially, Plaintiffs also brought claims against a second defendant, Primary Residential Mortgage, Inc.  *See* ECF No. 18.  PRMI was voluntarily dismissed from the case on August 8, 2016. *See* ECF No. 28.

[2] This class action settlement was negotiated over the course of a nearly six-month long mediation process, involving extensive informal exchanges of information and data, as well as three

38.  On June 15, 2017, the Court entered an order preliminarily certifying a class for settlement purposes only, preliminarily approving the parties' proposed class settlement, appointing class representatives and class counsel, approving the notice plan, and setting a final fairness hearing.  *See* ECF No. 53.  The fairness hearing was conducted on November 20, 2017.

## II.    The Settlement

The settlement in this case offers account adjustments, which are intended to provide class members with the opportunity to receive relief equal in amount to any actual economic damages their loan balances may have suffered as a result of payment misapplications caused by the extra payment processing issue.  In other words, class members are entitled to receive 100% recovery of any economic injuries to their loans as a result of the extra payment processing issue.

The settlement class includes 9,011 loans that have been paid off already.  On approval of the settlement, these loans automatically will be reviewed to determine what, if any, account adjustment relief is due.  *See* ECF No. 46-2 at ¶¶ 4.4.1-4.4.3.  The remaining 25,725 loans in the settlement class—those with either "active" or "transferred" status—have been offered the opportunity to have their accounts reviewed for entitlement to account adjustment relief on a claims-made basis.  *Id*. at ¶¶

---

separate mediation sessions with The Honorable Thomas E. Scott (Ret.).  The Court again commends both sides' counsel  and Judge Scott on their efforts to resolve this matter.

4.5.1-4.5.6.  The deadline for class members with active or transferred loans to submit claim forms is January 19, 2018.  ECF No. 53 at ¶ 20.  The Settlement Administrator has already received over 5,900 claim forms from class members, such that nearly 15,000 of the 34,736 in the settlement class are already participating in the settlement relief process.  ECF No. 58-1 at ¶ 22.  This equates to a participation rate by the settlement class of 42.8%, with almost two months left before the deadline to submit claim forms.  *See id*. at ¶ 23.

In exchange for the settlement relief, class members will release (a) any claims related to Ocwen's application or misapplication of payments for loans enrolled in an ACI weekly or biweekly payment plan and serviced by Ocwen on the REALServicing platform; and (b) any claims arising in whole or in part from Ocwen's termination of those ACI programs effective February 1, 2017.  ECF No. 46-2 at ¶ 8.1.  The settlement agreement does not alter, extinguish, release, or modify the terms of the class members' loans, except to the extent of any account adjustment to which they may be entitled under the settlement.  *Id*. at ¶ 8.6.

## III.   Final Approval of Class Action Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  A court should approve a class action settlement where it is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), and "not the product of collusion between the parties," *Bennett v. Behring Corp*., 737 F.2d

982, 986 (11th Cir. 1984).   In assessing a settlement's fairness, adequacy and

reasonableness, courts balance the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3)
> the point on or below the range of possible recovery at which a settlement
> is fair, adequate and reasonable; (4) the complexity, expense and duration
> of litigation; (5) the substance and amount of opposition to the settlement;
> and (6) the stage of proceedings at which the settlement was achieved.

*Nelson v. Mead Johnson & Johnson Co*., 484 F. App'x 429, 434 (11th Cir. 2016); *cf*

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).  In doing so,

a court "should not try the case on the merits."  *Behrens v. Wometco Enter., Inc*., 118

F.R.D. 534, 539 (S.D. Fla. 1088), *aff'd*, 899 F.2d 21 (11th Cir. 1990).  Rather, the Court

should "rely upon the judgment of experienced counsel" and, absent evidence or

collusion, "should be hesitant to substitute its own judgment for that of counsel."

*Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 632 (11th Cir. 2015).

### A.     Reasonableness of the Notice to the Class

Before granting final approval of a class action settlement, a court must ensure

that reasonable and adequate notice was provided to class members.   *Phillips*

*Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).  Notice must be "reasonably

calculated, under all the circumstances, to apprise [class members] of the pendency of

the action and afford them an opportunity to present their objections."  *Id*.  While

reasonable efforts should be made to reach the entirety of the class, Rules 23 does not

require that each individual class member actually receive notice.  *Juris v. Inamed*

*Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012).  Instead, it requires only "the best notice that is practicable under the circumstances," directed individually "to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

In this case, the Court previously approved the form and content of the parties' proposed notice plan as "reasonably calculated, under the circumstances, to apprise [c]lass [m]embers of the pendency of this [a]ction, the terms of the proposed [s]ettlement, and of their rights under and with respect to" it.  *See* ECF No. 53 at ¶ 14. The Court concluded that the proposed notice plan satisfied "all applicable requirements of law, including, but not limited, 28 U.S.C. § 1715, Federal Rule of Civil Procedure 23(c), and the United States Constitution."  *Id*.  The Settlement Administrator has now represented that notice was provided in accordance with the approved plan to over 99% of settlement class members.[3]  *See* ECF No. 58-1.  The Court thus finds that the notice was reasonable, adequate, and the best practicable under the circumstances.

## B.      The Absence of Fraud or Collusion

In evaluating a settlement's fairness, adequacy and reasonableness, a court must ensure that the settlement is not the product of collusion by the negotiating parties.

---

[3] The Notice Administrator attempted to send notice, via first class mail, to all members of the settlement class.  The roster of class members contained 34,736 loans, with 52,502 potential settlement class members as borrowers on the loans.  A total of 329 class notices were returned by the United States Postal Service as undeliverable and without forwarding address information.  *See* ECF No. 58-1 at 7.  Thus, the direct mail reach-rate was 99.1%.

*Leverso v. S. Trust Bank of Ala., N.A.*, 18 F.3d 1527, 1530, n.6 (11th Cir. 1994). In making this determination, courts begin with "a presumption of good faith in the negotiation process." *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). "Where the parties have negotiated at arm's length, the [c]ourt should find that the settlement is not the product of collusion." *Id.*

In this case, the Court has already found that the settlement was the result of "serious, informed, non-collusive, arm's-length negotiations." ECF No. 53. The record fully supports this finding. The negotiations were protracted, extending over a nearly six month period of time during which the parties participated in three separate formal mediation sessions, exchanged numerous rounds of informal discovery, and conducted extensive data and legal analysis. *See* ECF No. 54-1 at ¶¶ 7, 9-10. The parties were aided at every step of the negotiation process by The Honorable Thomas E. Scott, a well-known and respected mediator. *See* ECF Nos. 31-1, 34-1, 36-1. The settlement offers all class members the same relief—an opportunity to recover 100% of any economic impact the extra payment processing issue may have caused their ACI loans. Finally, class counsel have moved for a fee and cost award that, in percentage terms, is below that frequently sought and approved in the Eleventh Circuit. *See* ECF No. 54. In sum, both the negotiations and the substantive terms of the parties' agreement reflect a good faith, arm's length bargaining process. Therefore, the Court finds that the settlement was not the product of fraud or conclusion.

**C.    Likelihood of Success at Trial**

The likelihood of success at trial is "weighed against the . . . relief contained in the settlement." *Lipuma v. Am. Express Co*., 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005).   Again, the Court's role is "not to try the case on the merits," *Behrens*, 118 F.R.D. at 539, and in assessing this factor, the Court should "afford[] great weight to the recommendations of counsel for the parties," *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989).   "Where a substantial question exists regarding the likelihood of success at trial, this factor weighs in favor of approving a proposed class action settlement." *Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007).

In this case, Plaintiffs have expressed confidence in their ability to prevail at trial; however, they acknowledge that Defendant has raised a number of defenses that could impede their ability to obtain class certification for purposes of litigation and trial.  *See* ECF Nos. 46 at 44, 46-1 at ¶¶ 3-4, 46-2 at ¶ 1.12.  Indeed, there exists a real possibility that Plaintiffs could come away with nothing at trial or at least fail in an effort to certify a class for trial.  None of the class members "have disputed that these obstacles exist and are formidable."  *See Hall v. Bank of America, N.A*., No. 1:12-cv-22700, 2014 WL 7184039, at *4 (S.D. Fla. Dec. 17, 2014).  In light of the full recovery for the class, as wells as the litigation risks Plaintiffs face absent settlement, the Court finds that this factor favors final approval.

**D.      Probability and Range of Possible Recovery Measured Against the Relief Offered by the Settlement**

The second and third factors—the range of possible recovery and the point on or below the range of possible recovery at which the settlement is fair, adequate and reasonable—are interrelated and favor approval of the settlement in this case.  *See Saccoccio*, 297 F.R.D. at 693.  It is not the value or nature of the settlement relief alone that is decisive, but whether that relief is reasonable when compared "with the [relief] plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing."   Manual for Complex Litigation (Third) § 30.42, at 238 (1995).  Accordingly, the relevant inquiry is whether the proposed settlement affords relief that "falls within th[e] range of reasonableness, [and] not whether it is the most favorable possible result of litigation."  *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999).  In other words, a court should compare the "possible recovery at trial" with the "proposed settlement in its totality" to determine whether the relief provided in the settlement represents a fair, adequate and reasonable compromise of the claims presented.  *Lipuma*, 406 F. Supp. 2d at 1322.

In this case, Plaintiffs brought claims for compensatory relief, seeking to recover economic injuries caused by the extra payment processing issue.  See ECF No. 58 at 30.  The settlement relief essentially mirrors the monetary relief sought in Plaintiffs' First Amended Complaint, ECF No. 18, in that it allows class members to recover 100% of any actual, economic injuries caused by the extra payment processing issue.

In that regard, it is arguably the best possible recovery for the class if they were to successfully litigate this case through trial.  Because there are no objections to the Settlement, and because this is "a rare class action settlement which provides complete relief for all alleged harms," *Messineo v. Ocwen Loan Serv.*, LLC, No. 15-cv-2076, 2017 WL 733219, at *9 (N.D. Cal. Feb. 24, 2017), the Court finds that these factors favor final approval.

### E.    The Complexity, Expense and Likely Duration of Trial

The complexity, expense, and likely duration of continued litigation also favor final approval.  This case was brought as a putative class action on behalf of in excess of 50,000 borrowers.  The parties have already expended significant resources over the last year on motions practice, mediation, investigations, and informal discovery.  *See* ECF No. 54-1 at ¶¶ 5-10, 18-19, 30-33.  Further litigation would be time-consuming and expensive.  Indeed, even if Plaintiffs were to prevail, a contested class certification, formal discovery and pretrial proceedings, class trial, and appellate process could go on for years, all in an effort to recover the same compensatory damages provided for in the settlement agreement.  Accordingly, the Court finds that this factor weighs strongly in favor of final approval.

### F.    Substance and Amount of Opposition

Courts "consider[] the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important

indicator as to its reasonableness and fairness." *Hall*, 2014 WL 7184039, at *5; *accord Lipuma*, 406 F. Supp. 2d at 1324 ("[T]he reaction of the class is an important factor."). It is "extremely unusual not to encounter objections" of some sort or number in response to a proposed class action settlement." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 478 (S.D.N.Y. 1998). In this case, the record reflects that over 99% of the 52,502 settlement class members were sent the class notice. *See* ECF No. 58-1 at 7. No objection to the settlement was filed. Moreover, only five requests for exclusion from the class were received, resulting in an opt-out rate of just 0.01%. *See id.* at 8. Finally, over 5,000 claim forms have been submitted to the settlement administrator, resulting in a claims rate to-date of 22.8% and an overall participation rate to date of 42.8%, which indicates the willingness of class members to be bound by the terms of the settlement. *See id.* at 10. The Court finds that the absence of objection, the very low opt-out rate, and the relatively high claim and participation rates by settlement class members weigh heavily in favor of final approval.

## G.     Stage of Proceedings

The stage of the proceedings at which settlement is achieved is evaluated "to ensure that the plaintiffs ha[d] access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Perez*, 501 F. Supp. 2d at 1383. "[V]ast formal discovery need not be taken," and in fact, "informality in the discovery of information is desired." *Lipuma*, 406 F. Supp. 2d

at 1324. The proper inquiry with respect to this factor is whether the plaintiffs and class counsel engaged in enough discovery to afford them an "adequate appreciation of the merits of the case," *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998), such that they were not "groping in the darkness" when negotiating the settlement, *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977).[4]

In this case, the Court already has found that Plaintiffs and class counsel were "informed and familiar with [the] legal and factual issues" necessary to adequately evaluate the merits and weigh the benefits of settlement against further litigation. ECF No. 53. The record fully supports this finding. This action was filed on April 6, 2016 and the settlement was announced on May 12, 2017, over a year later. During the interim, extensive investigation and informal discovery occurred. More specifically, Ocwen produced several hundred megabytes of electronic information, as well as hundreds of pages of traditional "hard copy" documents, which class counsel analyzed with the assistance of economists and forensic accountants. See ECF No. 54-1 at ¶¶ 6-7. This process enabled Plaintiffs and class counsel to determine that a claims-based settlement structure would provide the best possible relief to the settlement class. *See* ECF No. 46-2 at ¶ 1.8(j); *see also Wilson v. Everbank*, No. 14-cv-22264, 2016 WL

---

[4] The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

457011, at *9 (S.D. Fla. Feb. 3, 2016) (collecting cases approving claims-made settlements and nothing that a claims process is particularly appropriate if it will afford claimants "near-complete relief" without the need for them "to submit any additional evidence").   Under these circumstances, the Court finds that the stage of the proceedings at which settlement was achieved favors final approval.

In sum, the Court finds that the settlement is not the product of collusion and instead is fair, adequate, and reasonable.  Accordingly, it is **ORDERED**:

1.     Plaintiffs' Motion for Final Approval of Class Action Settlement, ECF No. 58, is **GRANTED**.

2.     Ocwen's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, ECF No. 23, is **DENIED** as moot.

3.     **Jurisdiction.**  Because due, adequate, and the best practical notice has been given and all potential settlement class members have been given the opportunity to exclude themselves from or object to the settlement, the Court finds and concludes that it has personal jurisdiction over all settlement class members and that venue is proper.[5]  The Court also finds and concludes that it has subject matter jurisdiction over this action, including, without limitation, jurisdiction to approve and enforce the settlement, grant final certification to the settlement class, and dismiss the action on the

---

[5] *See, e.g., Phillips Petroleum Co.,* 472 U.S. at 811-12.

merits and with prejudice, all while retaining jurisdiction to enforce the settlement as provided below.

4.      **Adequacy of Representation.**   The Court finds and concludes that the Begleys and class counsel have adequately represented the settlement class for purposes of entering into and implementing the settlement.

5.      **Final Class Certification.**   The settlement class preliminarily certified by the Court on June 15, 2017 is hereby finally certified for settlement purposes only, as it fully satisfies all the applicable requirements of Rule 23 and due process.   The settlement class is comprised of:

> All persons who were borrowers on home mortgage loans on which any payments were made to Ocwen under a weekly or biweekly accelerated payoff program administered by ACI while those loans were being serviced by Ocwen on the REALServicing loan servicing platform.

> Excluded from the settlement class are:  (a) Ocwen's board members and executive level officers; (b) all federal judges, their spouses, and persons within the third degree of relationship to them; and (c) the following eight persons who timely and properly excluded themselves from the settlement class:  Douglas C. Knight, Fred E. Carl, Nadine C. Grimm, Samuel S. Grimm, Gerard Gorski, Jadwiga La France, Andrew Cobos, and Casie Cobos.

6.      **Class Notice.**   The Court finds and concludes that that the parties and Settlement Administrator fully discharged the duties imposed on them by the Court's June 15, 2017 Order with respect providing notice to the settlement class.   The Court further finds and concludes that the dissemination of the class notices, along with the

notice dissemination methodology implemented pursuant to the settlement and Court's June 15, 2017 Order:

(a) constituted the best practicable notice to the settlement class members under the circumstances of this action;

(b) constituted notice that was reasonably calculated, under the circumstances, to apprise the settlement class members of (i) the pendency of this action; (ii) the terms of the proposed settlement; (iii) their rights under the proposed settlement, including their right to exclude themselves from the settlement class or object to any aspect of the settlement; (iv) their right to appear at the fairness hearing, either on their own or through counsel hired at their own expense, if they did not exclude themselves from the settlement class; and (v) the binding effect of the orders and judgment in this action, whether favorable or unfavorable, on all persons and entities who did not request exclusion from the settlement class;

(c) constituted notice that was reasonable, due, adequate, and sufficient notice to all persons and entities entitled to be provided with notice; and

(d) constituted notice that met all applicable requirements of the Federal Rules of Civil Procedure and the Due Process Clause of the United States Constitution.

7.   **Final Settlement Approval.**

a.  The Court finds and concludes that the terms and provisions of the proposed settlement, including all of its exhibits, have been negotiated and entered into

by the parties in good faith and at arm's length.  The settlement is both substantively and procedurally fair, and is hereby fully and finally approved as fair, reasonable, and adequate as to each of the parties and each of the settlement class members.  The Court further finds and concludes that the settlement fully complies with all applicable requirements of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).  In sum, the settlement, is fully and finally **APPROVED** in all respects.

b.  The parties are hereby directed to implement and consummate the settlement according to its terms and provisions.  The parties are also directed to take all steps necessary and appropriate to provide the settlement class members with the benefits to which they are entitled under the settlement.

c.  The parties are hereby authorized, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the settlement and its implementing documents, if such changes are not materially inconsistent with the Court's Final Order and Judgment and do not materially limit, or materially and adversely affect, the rights or objections of the settlement class members under the settlement as presently before the Court.

8.    **Binding Effect.**  The terms of the settlement and of this Final Order and Judgment shall be forever binding on the Begleys, Ocwen, and all settlement class members, as well as their present, former and future heirs, guardians, assigns,

executors, administrators, representatives, agents, attorneys, partners, legatees, predecessors, and/or successors. The terms of the settlement and of this Final Order and Judgment shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons or entities, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in the action or are otherwise encompassed by the release.

9.     **Release.**  The Court hereby approves, incorporates and adopts the release set forth in Section 8 of the settlement.  The Release hereby is made effective as of the Final Settlement Date, and will forever discharge Ocwen and the released parties of and from any liability arising in whole or in part from the released claims as defined in the settlement.

10.     **Permanent Injunction.**  The Begleys and all of the settlement class members who did not timely exclude themselves from the settlement class are hereby permanently barred and enjoined from bringing, filing, commencing, prosecuting, maintaining, intervening in, participating as a party or class member in, or otherwise pursuing or receiving any benefits from any lawsuit (including putative class actions), arbitrations, administrative, regulatory, or other proceedings or orders in any jurisdiction that is based on or related to, directly or indirectly, in whole or in part, the released claims.  The Court finds that issuance of this permanent injunction is necessary

and appropriate in aid of its continuing jurisdiction and authority over the action and settlement.

11. **Retention of Jurisdiction.**  The Court expressly finds that there is no just reason for delay and the Clerk of Court is directed to enter this Final Order and Judgment as a final judgment.  Without in any way affecting the finality of this Final Order and Judgment, the Court expressly retains exclusive and continuing jurisdiction: (a) as to the administration, consummation, enforcement and interpretation of the settlement, including the release, and the Final Order and Judgment; (b) resolution of any disputes concerning settlement class membership or entitlement to benefits under the terms of the settlement; and (c) all parties hereto, including members of the settlement class, for purposes of enforcing and administering the settlement and this action generally, until each and every act agreed to be performed by the parties has been performed in accordance with the settlement.

12. **No Admissions.**    Neither this Final Order and Judgment, nor the settlement, nor any other document referred to herein, nor any action taken to carry out this Final Order and Judgment, is, may be construed as, or may be used as an admission or concession by or against Ocwen or the released parties of the validity of any claim or defense or any actual or potential fault, wrongdoing, or liability.  Ocwen continues to deny that the action meets the requisites for class certification under Rule 23 for any purpose other than settlement.  Entering into or carrying out the settlement, and any

negotiations or proceedings related to it, shall not in any event be construed as, or deemed evidence of, an admission or concession as to Ocwen's denials or defenses, and shall not be offered or received in evidence in any action or other tribunal for any purpose whatsoever, except as evidence to enforce the provisions of the settlement and this Final Order and Judgment; provided, however, that this settlement and Final Order and Judgment may be filed in any action brought against or by Ocwen or the released parties to support a defense of res judicata, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

13.     **Termination of Settlement.**   This Final Order and Judgment shall become null and void and shall be without prejudice to the rights of the parties and settlement class members, all of whom shall be restored to their respective positions existing immediately before the Court entered its June 15, 2017 Order, if:  (a) the settlement does not reach the Final Settlement Date as defined in Section 2 of the settlement agreement; (b) the settlement is terminated by a party in accordance with its provisions; or (c) the settlement does not become effective for any other reason.

14.     **Dismissal of Action.**  The Court is contemporaneously entering a separate Order awarding fees, which is incorporated herein by reference.   Subject to the provisions of that separate Order and this Final Order and Judgment, including the Court's retention of jurisdiction as set forth herein, this action (including all individual

and class claims presented herein) is hereby dismissed on the merits and with prejudice, and without fees, expenses, costs to any party or settlement class member, except as otherwise provided by the Court.

**SO ORDERED**, on this 22nd day of November, 2017.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**